United States v. Burks is the third case for argument today. Ms. Michaelis. Good morning. May it please the Court, My name is Quinn Michaelis, and I am here on behalf of the appellant, Aubrey Burks. The sole issue before this Court is whether the district court erred in denying Mr. Burks' request to have the sentence on his violation of supervised release run concurrent to his yet-to-be-imposed sentence in the state court without providing an adequate explanation for that denial. And I do want to alert the Court that this issue may become moot by the time that Your Honors render an opinion. The crux of the issue here... When does he get out? Well, according to the Bureau of Prisons website, it is August 19th of this year, but he is still in the state court, in custody in state court. Well, wait a minute. How would it be moot if he gets out? This is why. So he is in custody in Milwaukee on a hold through the Bureau of Prisons. So right now he can't get out regardless. He will still be in custody after August 19th, but because our request was for the sentences to run concurrent, he's effectively doing that right now. Because the Bureau of Prisons has retained custody of him, because he was brought to state court... So he's going to get the credit for concurrent sentences in the state court? Well, the federal sentence will terminate on August 19th. Right, and he'll still be in state custody. Right. So he's basically getting what he wanted through operation of the state court. Right. I don't think that the state court will credit his time, because he'll have been given credit for his time to the federal sentence, but the problem with the sentence that we're identifying will effectively go away, because he will have the opportunity to participate in this work release program that was the crux of the sentencing request before the district court. So I can continue on with our argument, but I think at this point it really doesn't matter. I think you should continue. Okay. We will decide this case well before August. I agree. And I also don't understand the point at all. If we hold that the sentence had to be concurrent, he'll get two years' extra credit against his state sentence. Potentially, because the Bureau of Prisons will... This case matters. Okay. You should proceed. All right. The sentencing guidelines, specifically Section 7B.1.3.F, advises that courts who are sentencing someone for a revocation, those sentences must run consecutive to any sentence a defendant is serving, even if that sentence is for the same conduct as the conduct that caused the violation. Ms. McHale, as you get into this, can you clarify one thing at the outset? Is your argument procedural? In other words, that the district court failed to explain the basis for the consecutive revocation sentence, or is it substantive? It's effectively that it failed to give an adequate explanation for why it denied the request to run the sentence as concurrent. Okay. Okay. In your brief on page 18, you say the district court failed to provide any explanation. And I had some difficulty with that because there's no question the district court provided an explanation. I thought your point, despite what you wrote in your brief, was more that it wasn't adequate. Right. And we are basing that on this Jackson case that we cited to in our brief, and I know that the government also cited to that case, saying that it was distinguished because in that particular case, the district court basically gave a similar kind of explanation, that the person before that court would not be getting any sort of benefit, basically. They shouldn't be getting a benefit by having a sentence run concurrently, which is what we're basically saying is what the district court did here, was that saying, if I give you credit or if I give you a concurrent sentence, it's basically me not giving you any sentence at all. And it's our position that that's not an adequate explanation for why the district court denied the request to run the two sentences concurrently. And the reason here why we cite to Jackson and another guideline is because 7B1.3 discusses sentences that have already been imposed in the state court or another court, and then the sentence for revocation. That's not really what happened here because there was no sentence yet in the state court for the district court to run its sentence concurrent or consecutive to. And of course, Chapter 7, the guidelines there, which govern revocations of probation and supervised release, are policy statements and are not by- So see, this is what confused me about your brief. If you're drifting into what seemed to me to be substantive legal points, what I thought from your first answer, what you were going to do is focus on the page or pages of the transcript where the district court explained the basis for the consecutive revocation sentence and then explain from your perspective why that's a deficient explanation. Sure. So from page 16 where we cite to the specific parts of the transcript, the court says it is unfortunate that the program will not work for him if he has a consecutive sentence here, but I don't see how I can do otherwise, frankly. And then basically says that if I were to give you a concurrent sentence, there would be no sentence. There would be no punishment here. Well, but what I read the district court to be saying is that this is a particular individual that really can't prove to be trusted. He walked out of the halfway house or the Salvation Army house or whatever facility he was in. He was testing positive for drug use, and then he's involved in a high-speed chase with the police where he kills somebody. And that's the context of those statements. I agree that there is that activity that happened in the case before the sentencing, but the sentence of the district court must still be fashioned with respect to the sentencing factors, of which one is the need to provide a defendant with needed educational or vocational training. The specific reason for asking for the concurrent sentence was to provide the defendant with vocational training, which was a program that he would not be eligible for if he were to get a consecutive sentence. So effectively what we're arguing here is that there was an abuse of discretion because the district court fashioned a sentence that disregarded that 3553A factor because it prevented him from having this opportunity for a rehabilitation program. And I'll reserve the rest of my time for rebuttal. Certainly, counsel. Mr. Kerwin. Good morning, and may it please the court. Brian Kerwin for the United States. Your Honor, the district court imposed a sentence for defendant's supervised release violation that was both procedurally sound and substantively reasonable. After properly calculating the guidelines range of 18 to 24 months that the parties agreed with, the court reasonably selected a sanction at the top of that range where defendant had fled from law enforcement at up to 84 miles an hour. What did the government ask for? Your Honor, the government asked for 24 months. I'm surprised Judge Guzman didn't give him more to tell you the truth. The statutory maximum for the violation was 36 months because it was a Class B felony underlying the original indictment. And he reasonably could have done so, I think, but he elected to give a guidelines range despite the egregious nature of the offense. But I take your point, Your Honor. This was conduct that was not a technical violation of a supervised release or simply drug abuse by an addict. This was an offense that was an exceptionally serious breach of the district court's trust, as Judge Guzman repeatedly emphasized. It was not the first time the defendant had violated the terms of his release. And in rejecting defendant's request for a sentence thrown concurrent to one he might receive in his related state case, the court was right to note that doing so would nullify that breach of the trust because the court is tasked in Chapter 7 of the guidelines with sanctioning that breach of trust as a separate and distinct punishment from the underlying conduct. Given the recent history in the case, the court was well within its right not to fashion a sentence that would permit defendants early release to participate in a work-relief program. The defendant already had refused to abide by a very similar program on the federal side and just several months prior to the fatal accident at issue in this case, Judge Guzman had shown him lenience and allowed the defendant to remain on supervised release despite using fentanyl specifically so that he could have the opportunity to continue to work. And that led to catastrophic results. So the court's 24-month sentence was consistent with the policy statements of the U.S. Sentencing Commission as set forth in Chapter 7, which govern here. And it was not plainly unreasonable in light of the grave nature of the conduct here to impose a 24-month sentence to Judge Kirsch's point. So unless there are any other questions, I'll ask that the court affirm the district court's judgment. Thank you, Mr. Kirwan. Anything further, Ms. McIlis? No, thank you. All right, well, Ms. McIlis, we thank you so much for accepting the appointment in this case. The case is now under advisement.